## WIGHT & WESLOSKY COMPANY *v.* WOLFF & HAPP.

Since the Supreme Court has no jurisdiction to entertain or pass upon a bill of exceptions from a "city court" unless the same was duly and within the meaning of the constitution established in a city, the General Assembly has no power to confer such jurisdiction with respect to a bill of exceptions from a court established in a designated town; nor to enact that such town shall be "recognized and declared to be a city within the meaning of those sections of the constitution which relate to city courts."

Argued May 21,—Decided November 28, 1900.

Motion to dismiss the writ of error.

*I. A. Bush & Sons,* for plaintiffs in error.
*Samuel S. Bennet,* contra.

LITTLE, J. The case now under consideration was brought to this court on a writ of error sued out from the city court of Camilla. On the call of the case a motion was presented by the defendant in error to dismiss the bill of exceptions, on the ground that a writ of error does not lie from the city court of Camilla to this court.

By the terms of par. 1 of sec. 1 of art. 6 of the constitution the judicial powers of this State are vested in a Supreme Court, superior courts, courts of ordinary, justices of the peace, commissioned notaries public, and such other courts as have been or may be established by law; and by paragraph 5 of the same section and article it is declared that the Supreme Court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors from the superior courts and from the *city courts of Atlanta and Savannah and such other like courts as may be hereafter established in other cities.* The jurisdiction of this court to entertain a bill of exceptions from the city court of Camilla depends upon the determination of the question as to whether that court is a like court to the city courts of Atlanta and Savannah, and is established in one of the cities of this State; for it will be noted that, in order to give this court jurisdiction by a bill of exceptions sued out from a city court other than those of Atlanta and Savannah, it must be established in a city of this State, and be a like court with that established in each of the two cities named. By reference to an act approved Oct. 24, 1887 (Acts 1887, p. 634), it will be observed that Camilla is chartered as one of the *towns* of this State. The act declares that from and after its passage the municipal govern-

ment of the *town* of Camilla shall be vested in a mayor and six councilmen, who are constituted a body politic and corporate under the name and style of the Mayor and Council of the Town of Camilla, etc. So that, if it be determined under the provisions of the constitution that this court has jurisdiction to entertain a writ of error from the city court of Camilla, it must be judicially determined that the words "town" and "city" are as a matter of law synonymous. One of the definitions given of the word "city" by Mr. Anderson in his Law Dictionary is, "a municipal corporation of the larger class, with powers of government confided in officers who are usually elected by a popular vote." By Mr. Black: "The term is used in America to denote a municipal corporation of a larger class, the distinctive feature of whose organization is its government by a chief executive and a legislative body." In the Standard Dictionary of the English Language a city is defined to be "a place inhabited by a permanent, organized community; more important than a town," while a town is defined to be "any considerable collection of dwelling-houses, especially as distinguished from the adjacent country." So that, by the lexicographers, an essential difference exists between a city and a town. This difference consists in size and population, and it can be readily perceived that such difference may demand for one a code of laws and municipal regulations not required by the other.

To support the legality of the writ of error in this case, reliance is placed on the terms of the act which established the city court of Camilla (Acts 1897, p. 430), to which we have before referred and which we will now further examine. The caption declares it to be an act to establish the city court of Camilla, in and for the county of Mitchell. The first section declares that "The city court of Camilla . . is . . created and established in the *town* of Camilla in the county of Mitchell, which town is hereby recognized and declared to be a city within the meaning of those sections of the constitution which relate to city courts." We have, by this part of the enactment, two legislative declarations of equal importance: first, that the court is established in the town of Camilla; second, that the town of Camilla is a city within the meaning of the provision of our constitution which relates to city courts. Construing the two acts together, it is manifest that it was not the purpose of the General Assembly to change the legal status of

Camilla as a town nor to classify it as a city, because not only the act of incorporation designates it as a town, but the act which creates the court recognizes it as a town, and the legislative declaration is that it shall only be a city for the purpose of bringing it within the terms of the constitution giving certain privileges to courts established in the cities of this State, not extended to courts, other than superior courts, which are or may be established elsewhere. Further analysing, these two acts mean that the town of Camilla, in which a city court has been established, shall have the benefit, so far as relates to that court, of these privileges which the constitution declares shall be confined to city courts established in the cities. As a matter of law, the legislature may classify the municipal corporations of this State, and the legislative declaration that a particular town, or towns, shall be classed as a city, or cities, would have force and effect; but when an act declares that a town shall be a city within the meaning of a given provision of the constitution, another and an entirely different question is raised. It becomes material, then, to ascertain in what sense the constitution uses the word "city" in this connection. If used in a particular sense, then a legislative declaration which would bring about a different application of the term would have no force. The provision of the constitution, as we have seen, is that the Supreme Court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors from the superior courts and from the city courts of Atlanta and Savannah, and such other like courts as may be hereafter established in other cities. Here the word "other" is a correlative adjective, and the cities referred to as *other* cities are placed in contrast with the cities of Savannah and Atlanta; and it could not have been the intention of the framers of the constitution, by the words used in this paragraph, to authorize the General Assembly by classification to extend to a small community the privileges which that instrument confines to a court established in a city of this State, because there is an absence of that reciprocal relation between the two which the constitution, by the use of the words "other cities," intended should exist. As a matter of judicial knowledge, the two cities named in the constitution have a large and increasing population, and a great volume of business resulting from mercantile, manufacturing, and other interests. In such a community not only is there need for the es-

tablishment of a city court, but, on account of the great and numerous interests which exist, there is also need of an early final determination of litigation.    The records of this court show that the business of the city courts of Atlanta and Savannah is large and important, and the number of cases pending on the dockets of this court from those city courts is quite large.    As demonstrating the wisdom of the provision which granted a direct bill of exceptions to the city courts in the two cities named, looking to the necessities of the communities in which they are established, it may be remarked that, as a matter of judicial history of the city of Atlanta, this court is every term called on to pass on cases adjudicated in two divisions of the city court, as well as cases regularly tried in the superior court of Fulton county, and a large number of criminal cases of the grade of felony arising by indictment in the superior court of that county, regularly tried by the judge of the Stone Mountain circuit, sitting in the city of Atlanta; and that in order to dispose of the business in the city of Atlanta these four courts are frequently engaged in the trial of cases at the same time, three of them being in session almost continuously.    This reference to the existing conditions in the city of Atlanta shows clearly that litigation in the cities of the State requires the establishment of courts not necessary in towns or villages.    It could not have been otherwise than contemplated by the framers of the constitution that the volume of litigation in all the cities of the State would not only require additional courts for its disposition, as compared with counties in which no populous city was located, but, if no provision was made for a direct bill of exceptions from these additional courts to the Supreme court, and no means provided whereby alleged errors of the trial judges of these city courts could be reviewed and corrected otherwise than by certiorari or appeal to the superior courts, that the business of the latter courts would be so great as to cause unreasonable delay in the disposition of pending cases, which might work in many instances a denial of justice.    The reasons which existed, at the time of the adoption of the constitution, for the establishment of a city court in the cities of this State, with the privilege of a direct bill of exceptions to the Supreme Court, do not require the creation of a city court with these privileges in those counties which do not contain a populous center, and where the citizens are

not engaged in manufacture, trade, or commerce, which contribute much to the number of cases brought into the courts.

Under the judiciary system established by our constitution, the specified courts in which the judicial powers of this State are invested are: the Supreme Court, with no original jurisdiction, and organized alone for the correction of errors; the superior courts, having general and original jurisdiction, and sitting not less than twice a year in each of the counties of the State; a justice of the peace and notary public, with limited jurisdiction, in each militia district in every county. The original judicial system of this State did not include a Supreme Court, the superior courts being the highest tribunals. These latter courts were intended as the great arbiter of the rights of the people, and, to accomplish the purposes intended, they were invested with full power to review and correct, by certiorari, errors committed in all inferior judicatories, besides entertaining appeals in many enumerated instances. The establishment of city courts with the right of direct writ of error was, by the provisions of the constitution, intended to provide for the needs of the people, and to meet business requirements. It is in the light of these facts that the paragraph now under review must be construed. Under another provision of that instrument, it is perfectly competent for the lawmaking power to establish city courts, not only in the different towns, but also in villages of this State, and, when established in conformity with law, such courts are invested with power to exercise the jurisdiction conferred on them; and from the rulings and judgments of these courts ample provision is made by the constitution for certiorari and appeal, for the correction of errors committed, to the superior courts; and from the action of the superior courts in such cases a writ of error lies to this court. But such a writ can not legally be entertained unless it comes from a city court contemplated by the constitution, and these, as we have endeavored to show, are such as are courts like those of the city courts of Atlanta and Savannah which have been established in the cities of this State.

Inasmuch, therefore, as it appears by the act incorporating the town of Camilla that that incorporation is not one of the cities of this State, such as was contemplated by the constitutional provision, it must follow that this court has no jurisdiction to hear and correct errors alleged to have been committed in the city court of Camilla,

by a direct bill of exceptions, and that the legislative declaration that the town of Camilla shall be held and deemed a city in contemplation of this provision is inoperative and of no effect.

*Writ of error dismissed.   All the Justices concurring.*

COBB, J.   I concur in the judgment rendered in this case, and also in the proposition announced in the headnote; but I can not concur in all of the reasoning of Mr. Justice Little in his opinion. The General Assembly has a right to establish courts and call them city courts.   Whether or not the errors of such a court can be corrected by a direct bill of exceptions to this court depends upon two questions: First, is the court a "like" court to the city court of Atlanta or the city court of Savannah?   Second, is the court established in a city of this State?   In regard to the first question, all that is necessary is that the court shall have substantially the jurisdiction and powers possessed by either of the city courts above mentioned, at the time the present constitution was adopted.   In considering the second question it is necessary to determine what is meant by the term "city," in the clause of the constitution which fixes the jurisdiction of the Supreme Court.   The constitution does not define the term "city," and therefore, in ascertaining what was meant by the use of the word, it is necessary to determine what was the meaning of that term at the time the constitution was adopted.   There can be but one answer to the question, and that is, that what is a city depends entirely upon what the legislature has declared to be a city by incorporating a community and calling it by this name.   The City of Savannah was a city by reason of the fact that the legislature had granted a charter to it as a municipal corporation and styled it a city.   The City of Atlanta was a city for a similar reason; and therefore any community of persons that the General Assembly incorporates as a city is one within the meaning of the constitution.   When, therefore, an act of the General Assembly creates a city court, and upon an inspection of the act it appears to confer upon that court jurisdiction and powers which make it substantially similar to either of the city courts named in the constitution, and by the terms of the act the court is located at a place which was, at the date of the passage of the act creating the court, an incorporated city, incorporated as such either by a special act of the General Assembly or by a general law providing for the incorporation of cities, such court is a city court within the meaning of

that clause of the constitution which gives the Supreme Court the right to correct the errors of city courts by direct bills of exceptions. It is to be noted that while the constitution requires that city courts shall be "like" courts to the city courts of Savannah and Atlanta, it does not require that they shall be established in "like" cities. There being nothing in the constitution defining a city, it was left entirely to the General Assembly to say what community of persons should be declared to be a city, and the General Assembly may arbitrarily determine this question; and the collection of individuals and dwelling-houses, no matter how many or how few, chartered as a city by the General Assembly, is a city within the meaning of the clause of the constitution above referred to. In the present case Camilla was incorporated by the General Assembly as a town, and as long as it stands so incorporated it can not be a city for any purpose; and therefore that part of the act establishing the city court of Camilla which declared that the "town of Camilla" should be recognized and declared to be a "city" within the meaning of the constitution. was an attempt to construe the constitution, which the General Assembly had no right to do. The General Assembly has the right to incorporate Camilla as a city, but until this is done it remains the town of Camilla. The General Assembly has no right to declare that any town is a city within the meaning of the constitution, when the legislative act declaring it to be a town remains unrepealed. As long as Camilla remains an incorporated town, a city court within the meaning of the constitution can not be created within that town, for the simple reason that the *town* of Camilla is not a city.

I am authorized by Mr. Justice Fish to say that he concurs in the views above expressed.