### SOUTHER *v.* BUTLER.

No. 14422.   February 9, 1943.   Rehearing denied March 11, 1943.

*W. G. Mann,* for plaintiff in error.   *Stafford Brooke,* contra.
*D. W. Mitchell,* on motion for rehearing.

Bell, Presiding Justice.   B. H. Butler filed an application or petition for the writ of quo warranto for the purpose of ousting W. H. Souther from the office of chief of police of the City of Dalton, on the ground that petitioner had been duly elected to such office and claimed the right and title thereto.   The application as amended contained several allegations seeking to raise an estoppel

as against the respondent. .The latter filed an answer, and a general and special demurrer; and the relator demurred generally to the response. The court sustained the respondent's special demurrer "as to allegations of estoppel," but overruled his general demurrer, sustained the relator's demurrer, thus striking the response, and entered final judgment in favor of the relator, directing "that the office of chief of police be surrendered by the respondent, W. H. Souther, to B. H. Butler, instanter." The respondent excepted. There was no cross-bill of exceptions.

On March 29, 1937, the charter of the City of Dalton, as amended, provided that there should be a city marshal, to be "selected" by the qualified voters of the city, at elections to be held biennially on the second Wednesday in December; and that the said marshal should select his own deputies, the number to be "regulated" by the major and council. Ga. L.. 1874, p. 181, sec. 26; Ga. L. 1885, p. 381, sec. 7; Ga. L. 1896, p. 145, sec. 2; Ga. L. 1902, p. 390, sec. 2; Ga. L. 1911, p. 1092, sec. 7.

By an act approved March 29, 1937, it was provided that the mayor and council at their first regular meeting in the year 1938 should appoint three citizens to be known as the police commission, who should elect some suitable person to be chief of police, and said chief of police should select police officers with the approval of said commission. The act further declared, among other things, that on such election of a chief of police the office of marshal should "become abolished;" that the chief of police should be the head of the police department of the city, and that all of the police officers should be subject to his direction and control. Ga. L. 1937, p. 1723.

The relator alleged, that on October 14, 1942, an election was held in the City of Dalton, to determine whether the qualified voters would ratify or reject the amendment to the charter contained in the act of 1937; that the result was in favor of the amendment; that following this election the mayor and council elected three named citizens as police commissioners, who in turn elected the relator as chief of police; whereupon he attempted to assume the office of chief of police of the City of Dalton, but was refused access thereto by the respondent, who claimed to be the duly qualified chief of police "under some pretended claim," and refused to vacate said office; and that relator is the duly elected

and qualified chief of police of the City of Dalton, and respondent has no claim or right to said office.

The application refers to only one election on ratification or rejection of the amendment of 1937, namely the one held in October, 1942, and is silent regarding petition of voters for any election. It is conceded that the City of Dalton has not at any time had a population as large as 50,000 inhabitants.

It is contended by the respondent, that the amendment of 1937 was one materially changing the form of government of a municipality under the Code, § 69-101, and that because it was not ratified within the time and in the manner prescribed by the Code, § 69-102, it never became effective as an amendment to the charter. These contentions were made both by demurrer and answer, one ground of the demurrer being that the petition sets forth no legal ground, reason, or qualification of the plaintiff to remove the defendant from the office. The relator contends that the amendment was not of such character that it fell within these sections, but that, even if it was subject to these provisions, the amendment would become effective if ratified at an election held within a reasonable time on call of the officers, and that all of this was done.

Other contentions are made on both sides; but the foregoing is deemed a sufficient statement, as we are of the opinion that the amendment of 1937 never became effective, as related to the office of marshal or chief of police, and therefore that the application of relator should have been dismissed on the general demurrer.

The Code, § 69-101, declares: "No local law seeking repeal of a municipal charter of a city of less than 50,000 inhabitants or an amendment to any municipal charter of a city of less than 50,000 inhabitants, which amendment materially changes the form of government of a municipality or seeks to substitute officers for municipal control other than those in control under the existing charter, shall become effective until such repeal or amendment shall be voted upon by the qualified voters of the municipality to be affected as hereinafter provided." § 69-101. Also: "Whenever a local law seeking a repeal of an existing municipal charter or an amendment as referred to in section 69-101 shall have been passed by the General Assembly, it shall be the duty of the city authorities in charge of such municipality in which the change is sought to call an election in said municipality to be held within 30 days

from the date of said call and publish a notice thereof in the official organ of the county of said municipality. . . If a majority of the votes cast at such election shall be in favor of the amendment to an existing municipal charter, the act amending such municipal charter shall become effective. If a majority of the votes cast in said election are not in favor of such repeal or amendment, the municipal charter then existing shall stand: Provided, however, that the provisions of this section shall not be effective and the officers of such municipalities shall not be required to call such election unless a petition signed by more than one fifth of the qualified voters of such municipality shall be filed with the officers of such municipality within 60 days from the passage of said bill requesting that such election be called." § 69-102.

In view of the important duties devolving upon the city marshal as an executive and law-enforcement officer (Ga. L. 1874, p. 183, § 29), and of the changes as to election and other matters relating to such office as declared in the act of 1937, this act, in our judgment, would constitute an amendment materially changing the form of the municipal government, within the meaning of the Code, § 69-101; and such being its nature, the act as applied to such office did not become effective as a part of the municipal charter unless the provisions of § 69-102 as to time of ratification were complied with. While the first part of this section did not specify any time within which the city authorities should call an election, it was declared in the proviso that this section shall not be effective and the officers shall not be required to call such election unless a petition signed by more than one fifth of the qualified voters shall be filed with the municipal officers "within 60 days from the passage of said bill requesting that such election be called." The application of the relator, construed most strongly against the pleader, shows upon its face that no such petition of voters was filed within the time required, and that no election whatever was called by the officers until more than five years after passage of the act of 1937. In the circumstances the act did not become effective as a part of the charter of the City of Dalton, as applied to the office of marshal or chief of police; and hence there was no authority in the mayor and council to elect a police commission, and the "commission" that was named had no authority to elect a chief of police. Therefore it appears that the relator had no

title whatever to the office of "chief of police," and his application for the writ of quo warranto, based solely on that claim, did not show any right to inquire into the claim of the respondent, and was subject to the general demurrer. This conclusion is not in conflict with anything ruled in *Milton* v. *Mitchell,* 139 *Ga.* 614 (77 S. E. 821). See, in this connection, Code, § 64-201; *Collins* v. *Huff,* 63 *Ga.* 207; *Crovatt* v. *Mason,* 101 *Ga.* 246 (3) (28 S. E. 891); *Hoover* v. *Brown,* 186 *Ga.* 519 (2) (198 S. E. 231). The court having erred in overruling the general demurrer to the application, the further proceedings were nugatory.

No ruling is intended as to the validity of the act of 1937, except as to the provisions referred to in this opinion, relating to the office of marshal or chief of police.

*Judgment reversed. All the Justices concur, except*

GRICE, Justice, dissenting. The controlling question is one that may frequently arise, and hence may affect many amendments to municipal charters. Being of the opinion that the local act here involved, which changes the method of selecting the police officers of the City of Dalton, does not materially change the form of government of such city within the meaning of the Code, § 69-101, I feel constrained to dissent.